**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, ELSEVIER, INC., and PEARSON EDUCATION, INC., | |
| Plaintiffs, | **Case No. 17-cv-4914-JFK** |
| v. | |
| XUHONG WANG, BU RU, and DOES 1-10 d/b/a www.ebooksgogo.com and www.ietext.com, | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR EXPEDITED DISCOVERY AND ALTERNATE SERVICE</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

      A. Plaintiffs' Businesses and Their Copyrighted Works ........................................... 2

      B. Defendants' Illegal Online Business .................................................................... 2

      C. Plaintiffs' Interactions with PayPal ...................................................................... 5


ARGUMENT ....................................................................................................................... 6

   I. PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY .............................. 6

      A. Legal Standard ...................................................................................................... 6

      B. Plaintiffs Satisfy the Factors for Good Cause ...................................................... 8

   II. PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS ......................................................... 9

      A. New York CPLR § 308 Authorizes Alternate Service on Individuals in the United States ........................................................................................................ 11

      B. Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country ........................................................................ 11

         1. Service of Process by Email is Not Prohibited by International Agreement ...................................................................................................... 13
         2. Service of Process by Email is Reasonably Calculated to Provide Notice to Defendants ..................................................................................... 15

CONCLUSION ................................................................................................................... 17

**CASES**

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, 2013 U.S. Dist. LEXIS 129749 (S.D.N.Y. Sept. 11, 2013)................................................................7

*Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.,* 910 N.Y.S.2d 418, 422 (N.Y. App. Div. 2010) ...........................................................11

*Arista Records LLC v. Doe,* 604 F.3d 110 (2d Cir. 2010) ...........................................................7, 9

*Ayyash v. Bank Al-Madina,* 233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................6

*Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14, 1997) ....................................................7

*Bloomberg, L.P. v. Doe,* No. 13 Civ. 01787 (LGS), 2013 WL 4780036, 2013 U.S. Dist. LEXIS 130034 (S.D.N.Y. June 26, 2013)..................................................8, 9

*Bomb First Prods., LLC v. Hustla, Inc.,* No. 651753/2012, 2014 N.Y. Misc. LEXIS 5928 (N.Y. Sup. Ct. June 24, 2014) ...........................................................11

*Broadfoot v. Diaz,* 245 B.R. 713 (Bankr. N.D. Ga. 2000)................................................15, 16, 17

*Chanel, Inc. v. Xu,* No. 2:09-cv02610, 2010 WL 396357, 2010 U.S. Dist. LEXIS 6734 (W.D. Tenn. Jan. 27, 2010)...........................................................16

*Digital Sin, Inc. v. John Does 1-176,* 279 F.R.D. 239 (S.D.N.Y. 2012)........................................6

*Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14629, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013) ...........................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) ...................................................8

*FTC v. PCCare247 Inc.,* No 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) ................................................12, 14, 15

*In re GLG Life Tech Corp. Sec. Litig.,* 287 F.R.D. 262 (S.D.N.Y 2012) ................................12, 14

*Gurung v. Malhotra,* 279 F.R.D. 215 (S.D.N.Y. 2011)...........................................................14-15

*Living Scriptures, Inc. v. Doe,* No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968 (D. Utah Nov. 10, 2010) ...........................................................7

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106 (S.D.N.Y. 2010) .....12

**TABLE OF AUTHORITIES**
(Continued)

## CASES

*Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968,
2012 U.S. Dist. LEXIS 77469 (S.D.N.Y. June 1, 2012)...................................................7

*McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010)............................................16

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412,
2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ...................................12, 13, 14, 15, 16

*Popular Enters. LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004)...............16

*Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307,
2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) ......................................13, 15

*Richmond Techs, Inc. v. Aumtech Bus Solutions,* No. 11-CV-02460-LHK,
2011 WL 2607158, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011).........................13-14

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ....................................12, 13

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLS), 2007 WL 1515068
2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007)...............................................12

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801 (N.Y. App. Div. 2013) ..........................................11

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)...............................8

*Snyder v. Energy, Inc.*, 857 N.Y.S.2d. 442 (N.Y. Civ. Ct. 2007) .................................................11

*Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007) ...........................................................................6

*Sulzar Mixpac AG v. Medenstar Indus. Co.,* No. 15 Civ. 1668 (JSR),
2015 U.S. Dist. LEXIS 159762 (S.D.N.Y. Nov. 27, 2015). .........................................15

*United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013) ...........12

*Williams v.Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005).........................................15-16

*Williams-Sonoma, Inc. v. Friendfinder, Inc.,* Case No. C-06-6572 JSW,
2007 WL 1140639, 2007 U.S. Dist. LEXIS 31299 (N.D. W. Va. 2005) .....................................14

**TABLE OF AUTHORITIES**
(Continued)

**STATUTES**

17 U.S.C. § 512..................................................................................................................6

**RULES**

Fed. R. Civ. P. 4........................................................................................................ *passim*

Fed. R. Civ. P. 26..............................................................................................................6

N.Y. C.P.L.R. § 308.........................................................................................................11

N.Y. C.P.L.R. § 311.........................................................................................................11

**OTHER AUTHORITIES**

Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361..................................13, 14, 15

4-13 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16 (2008)........................8

Cengage Learning, Inc., McGraw-Hill Global Education Holdings, LLC, Elsevier, Inc., and Pearson Education, Inc. (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby move the Court for an Expedited Discovery Order and Order Authorizing Alternate Service, and state as follows:

## PRELIMINARY STATEMENT

This is a case brought by some of the nation's largest and most well-respected textbook publishers against a group of scofflaws that own and operate a blatantly and completely illegal online business. At the expense of Plaintiffs and the integrity of the academic process, Defendants run websites *dedicated* to making and selling unauthorized, complete digital copies of the publishers' copyrighted textbooks. Defendants knowingly and intentionally make these infringing copies, which they store in digital format on their computers and sell to customers. Defendants undoubtedly know that their activities are illegal, selling their bootleg copies anonymously on line, concealing their locations and registering their domain names with false addresses. Defendants profit directly from the large-scale infringement they cause.

Plaintiffs bring this case against Defendants in order to protect their rights and put an end to Defendants' illegal activity. In order to move the case forward, Plaintiffs seek limited expedited discovery to determine Defendants' true identities and locations. In addition, Plaintiffs request an order authorizing alternate service so that they may serve the complaint upon Defendants by email, and subsequently serve Defendants with notice of a preliminary injunction and asset restraint that Plaintiffs intend to seek. The relief Plaintiffs seek is critical to Plaintiffs' ability to name and serve the proper Defendants in this action, enjoin Defendants' infringing conduct, preserve Defendants' assets for an accounting and other remedies pending the resolution of this case, and proceed with their claim.

## STATEMENT OF FACTS

### A.       Plaintiffs' Businesses and Their Copyrighted Works.

Plaintiffs are four of the largest and most successful textbook publishers in the United States and throughout the world.  Compl. ¶¶ 1, 14.  Plaintiffs develop, market, distribute, license, and sell a comprehensive range of traditional and digital educational content and tools to professionals and students.  *Id.* ¶ 1.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  *Id.* ¶ 14.  Plaintiffs' publications include physical and digital textbooks (collectively, "Textbooks").  *Id.*  These Textbooks are widely available in the marketplace for sale, rental, or subscription, including from physical and online bookstores.  *Id.*

Exhibit A to the Complaint is a list of a number of Plaintiffs' Textbooks.  Plaintiffs own or control the copyright in each of their respective works or derivative works listed on Exhibit A, among others (hereinafter "Plaintiffs' Works").  Compl. ¶ 15.  Plaintiffs have the exclusive right to reproduce and distribute Plaintiffs' Works.  *Id.*  Plaintiffs or their predecessors or affiliates have duly registered their respective copyrights protecting Plaintiffs' Works as set forth on Exhibit A.  *Id.*

Plaintiffs invest significant resources to publish their copyrighted works.  Compl. ¶ 16. Plaintiffs make substantial investments, for example, in content creation and in promotion of their copyrighted works.  *Id.*  Plaintiffs would suffer financial injury if their copyrights were not enforced.  *Id.* ¶ 17.  A substantial decline in their income from textbooks could cause Plaintiffs to cease publishing one or more deserving books.  *Id.*  This would adversely impact the creation of new works, scholarly endeavor, and scientific progress.  *Id.*

### B.       Defendants' Illegal Online Business.

Defendants are Xuhong Wang and Bu Ru (if they are even real people), and Does 1-10,

2

whose true identities and locations Plaintiffs do not currently know.  Compl. ¶¶ 11-13.

Defendants own, control, and are doing business as and through multiple illegal online sites, including but not limited to www.ebooksgogo.com, and www.ietext.com, (the "Infringing Sites" or "Sites"), the sole object of which is to make money from infringement through the unauthorized reproduction, distribution, and sale of digital copies of books ("Infringing E-books").  Compl. ¶ 19; Declaration of Dan Seymour ("Seymour Decl.") ¶ 4.  Defendants also carry out their illegal online operation through the email addresses domaindaili@163.com, omyname@gmail.com, order@ebooksgogo.com, nuuroogee@gmail.com, ungulatev@hotmail.com, support@ietext.com, and support@shopoin.com ("Defendants' Email Addresses," or "Email Addresses").  Compl. ¶ 20; Seymour Decl. ¶ 5.  Defendants use the Email Addresses to answer customer inquiries about the Infringing E-books, to accept payment through third-party payment processors, and to confirm orders placed on the Infringing Sites.  Seymour Decl. ¶ 5.  Several of Defendants' Email Addresses have also been used to register the domain names for the Infringing Sites, and sign up for web hosting and other third party services connected with the Infringing Sites.  *Id.*

Through their highly interactive websites, and via other means, Defendants distribute Infringing E-books, including unauthorized copies of Plaintiffs' Works, to the public in violation of Plaintiffs' copyrights.  Compl. ¶ 21; Seymour Decl. ¶ 4.  At Defendants' Sites, customers can scroll through or search for listings of the unauthorized digital copies of Plaintiffs' Textbooks, which Defendants made and maintain on computers Defendants own or control.  Compl. ¶ 23.

Visitors can interact with the sites, view information on the massive catalogue of items available for purchase, and then move forward with the transaction.  Visitors can search by keyword, such as title, author, or International Standard Book Number ("ISBN").  Compl. ¶ 23;

Seymour Decl. ¶ 12.  Alternatively, a visitor can also browse titles by subject matter.  *Id.*  Then,

upon payment of a fee, Defendants distribute copies of the Infringing E-books to their customers,

including to students and other individuals located in this District, in violation of Plaintiffs'

copyrights listed on Exhibit A.  Compl. ¶¶ 21, 33.  Thus, at the touch of a few keystrokes, and

armed with a credit card or other means of online payment, such as a PayPal account, a visitor

can purchase and download unauthorized copies of Plaintiffs' and other publishers' works.

Compl. ¶ 23.

Defendants' Infringing Sites receive thousands of unique visitors per month from

customers and prospective customers located throughout the United States, including this

District, as well as abroad.  Compl. ¶ 26; Seymour Decl. ¶ 10.  Indeed, one report indicates that

www.ebooksgogo.com received over 24,000 visits in one month alone, virtually of which came

from within the United States.  *Id.*

Defendants conduct their business *solely* by email and over the Internet, making

concerted efforts to conceal their true names and physical locations.  Compl. ¶ 27; Seymour

Decl. ¶ 7.  Defendants attempt to conceal their identity and frustrate attempts to stop their

unlawful activity by not putting any real names or physical addresses on the Infringing Sites,

hiding behind entities that may or may not exist, and registering their domain names with false

addresses.  Compl. ¶ 27; Seymour Decl. ¶¶ 5, 7-8.

While pirates such as Defendants are notorious for and adept at hiding their identities and

locations, Defendants nevertheless utilize the services of a number of companies in the United

States to conduct their infringing activities.  In particular, Defendants employ (a) domain name

registration services and web hosting services through GoDaddy.com, LLC, and (b) payment

processing services through PayPal, Inc. and WooCommerce.  Compl. ¶ 28; Seymour Decl. ¶ 11.

The foregoing list is not necessarily exhaustive.

Defendants' reproduction and distribution of Plaintiffs' valuable copyrighted works takes place without authorization from and without compensation to Plaintiffs, their authors, and others in the legitimate chain of commerce. Compl. ¶ 29. On the contrary, Defendants' actions described herein benefit Defendants alone for their commercial purposes and gain. *Id.* Defendants sell complete, unauthorized digital copies of Plaintiffs' Textbooks into the marketplace with no way to prevent their viral downstream dissemination. *Id.* In fact, Defendants market their Sites by touting that they deliver the Infringing E-books without digital rights management ("DRM") technology that restricts subsequent copying. Compl. ¶ 29; Seymour Decl. ¶ 13. Such infringing activity steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments. Indeed, Plaintiffs have made test purchases from Defendants, confirming that Defendants provide customers with complete, unauthorized digital copies of their Textbooks, just as advertised. Compl. ¶ 25; Seymour Decl. ¶¶ 17-24.

Defendants are well aware of the enormous infringement that they cause. Compl. ¶ 30. They did not take the steps necessary to operate a legitimate online store. *Id.* Defendants instead chose to copy and upload a massive amount of infringing files for sale to customers. *Id.* Defendants have sold Infringing E-books, and continue to do so, with the full awareness that they have not been granted any license, permission, authorization, or consent to copy or distribute the underlying copyrighted works. *Id.*

Defendants have caused Plaintiffs significant and substantial harm, including in this District, and Defendants are aware that they have caused Plaintiffs to suffer such harm. *Id.*

**C.** **Plaintiffs' Interactions with PayPal**

Prior to filing this lawsuit, Plaintiffs notified PayPal of the infringement taking place on Defendants' Sites. Plaintiffs sent PayPal an Infringement Report providing all the elements of a

notification under the DMCA pursuant to 17 U.S.C. § 512(c)(3)(A). *See* Seymour Decl. ¶ 26.

PayPal has placed a temporary "hold" on the PayPal funds connected to Defendants' illegal

activities, pursuant to PayPal's own user agreements and policies. *See* Seymour Decl. ¶ 27.

However, this hold will not last the duration of this case. Accordingly, Plaintiffs bring this

motion so that they can identify and serve Defendants, and subsequently move forward with a

motion to preliminarily enjoin Defendants' further infringement and preserve their rights during

the pendency of this case. Absent a court order restraining the disbursement of funds on

temporary hold with PayPal, Defendants will surely transfer such funds out of reach at their

earliest opportunity.

## **ARGUMENT**

## I.    **PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY**

Plaintiffs seek limited expedited discovery, as described in the accompanying proposed

order, to confirm or identify the true names and locations of Defendants. The targeted discovery

Plaintiffs request will permit this action to proceed efficiently. While discovery generally must

await the parties' Rule 26(f) conference, the Court can order otherwise. Fed. R. Civ. P. 26(d)(1).

This is the classic case where such an order is not only appropriate, but is necessary. Plaintiffs

cannot conduct a Rule 26(f) conference because they do not know the Defendants' true names

and locations.

### A.    **Legal Standard**

Courts in this district apply a "flexible standard of reasonableness and good cause" to

determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference.

*Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v.*

*Bank Al-Madina,* 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)). In *Stern v. Cosby*, then-District

Judge Chin explained that this District's flexible standard of "reasonableness" and "good cause" allows for review of an application to proceed on an expedited basis under what "is reasonable in light of all the circumstances." 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing cases).

Even more pertinent here, "[c]ourts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe Defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." *Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, 2013 U.S. Dist. LEXIS 129749, at *4 (S.D.N.Y. Sept. 11, 2013); *see also Arista Records LLC v. Doe*, 604 F.3d 110, 117-24 (2d Cir. 2010); *Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968, 2012 U.S. Dist. LEXIS 77469, at *1 (S.D.N.Y. June 1, 2012) (finding good cause for expedited discovery "because, without it, Plaintiff will not be able to ascertain the identities of the Doe defendants or to effect service upon them"). Expedited discovery "is routinely granted in actions involving infringement and unfair competition." *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) (citing cases); *see also Arista Records v. Doe*, 604 F.3d at 117-24 (affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet users allegedly committing copyright infringement); *Living Scriptures, Inc. v. Doe*, No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968, at *4 (D. Utah Nov. 10, 2010) (granting *ex parte* motion for expedited discovery from PayPal in copyright infringement case).

In addition to whether a movant has stated a *prima facie* case and an inability to identify the defendants absent a court order, courts look to the following additional factors in determining whether to allow expedited discovery: (1) the necessity of the subpoenaed information to advance the claim; (2) the specificity of the discovery request; and (3) the defendant-user's

expectation of privacy. *See Bloomberg, L.P. v. Doe*, No. 13 Civ. 01787 (LGS), 2013 WL

4780036, 2013 U.S. Dist. LEXIS 130034, at *6-7 (S.D.N.Y. June 26, 2013); *Sony Music Entm't

Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565-67 (S.D.N.Y. 2004). Plaintiffs easily meet these

requirements.

### B.      Plaintiffs Satisfy the Factors for Good Cause

Plaintiffs have alleged a *prima facie* case for copyright infringement. Plaintiffs have

alleged that they are the copyright owners of, and/or the owners of the exclusive rights under

copyright in, the works at issue, and that Defendants reproduced and distributed those

copyrighted works without Plaintiffs' authorization. *See* Compl. ¶¶ 15, 20, 29, 30, 32-33. Those

allegations state a claim of copyright infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

499 U.S. 340, 361 (1991); 4-13 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* §

13.01.

Plaintiffs also satisfy the remaining requirements for good cause because: 1) Plaintiffs

have a substantial need for the discovery; 2) they seek discrete information tailored to identify

the Defendants and their whereabouts; and 3) Plaintiffs' need for the information substantially

outweighs any argument that Defendants have as to their expectation of privacy in the

circumstances here.

Without the ability to uncover the true names and identities of Defendants, Plaintiffs

cannot name and serve the proper defendants and will be unable to litigate their claims. There is

simply no other means for Plaintiffs to ascertain Defendants' true identities without the requested

discovery. Accordingly, Plaintiffs have a substantial need for the discovery.

As laid out in Plaintiffs' proposed order, Plaintiffs' request seeks discrete information

sufficient to identify and serve Defendants. The proposed request is narrow in scope in that, if

the Court grants Plaintiffs' request, the subpoenas will seek only Defendants' true names, current

(and permanent) addresses, email, and other identifying information.

Lastly, Plaintiffs' need for the subpoenaed information outweighs any argument that Defendants have a cognizable expectation of privacy and anonymity. Defendants are "entitled only to a 'minimal expectation of privacy' . . . where Plaintiff [has] alleged what appear to be meritorious [intellectual property] infringement claims and must determine Defendant's identity in order to litigate those claims." *Bloomberg*, 2013 U.S. Dist. LEXIS 130034, at *9; *see also Sony Music*, 326 F. Supp. 2d at 562-67 ("[D]efendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims"). As the Second Circuit in *Arista Records v. Doe* found, a defendant's "expectation of privacy for sharing copyrighted [materials] through an online file-sharing network [is] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement." 604 F.3d at 124. The court said further, "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." 604 F.3d at 118; *see also Bloomberg,* 2013 U.S. Dist. LEXIS 130034, at *6.

Accordingly, Plaintiffs meet all of the factors for immediate, limited discovery to identify Defendants, including their names, aliases, and contact information.

## II.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS

Defendants operate and conduct an international, illegal online business. Plaintiffs believe Defendants Xuhong Wang and Bu Ru (if they are even real people) are in China; however, Plaintiffs' inquiries have revealed that the only addresses Defendants provided—the addresses used in connection with Defendants' domain name registrations—are false. *See* Compl. ¶ 27; Seymour Decl. ¶ 8. Thus, Plaintiffs do not currently know where to serve

Defendants Xuhong Wang and Bu Ru. Likewise, Plaintiffs do not know where to serve the Doe Defendants because Defendants have gone to great lengths to conceal their identities and locations. Compl. ¶ 27; Seymour Decl. ¶ 7. On the other hand, there is no question that Defendants regularly use email for purposes of operating their illegal online business. Seymour Decl. ¶ 5. Defendants use Defendants' Email Addresses in connection with the Infringing Sites to register the Sites, provide payment instructions to customers, accept and confirm payment for orders placed on the Infringing Sites, provide support with downloaded files, and answer other customer inquiries. *Id*. Indeed, Plaintiffs paid for their test purchases on the Infringing Sites via remitting funds to a PayPal account linked to Defendants' Email Addresses. Seymour Decl. ¶¶ 15, 19, 22. Plaintiffs also made test emails to Defendants, and none of the messages were returned as undeliverable, which reinforced the reliability of the email addresses. Seymour Decl. ¶ 7. Plaintiffs thus request that the Court grant authorization to serve process of this action upon Defendants by email.

The Court may authorize service by email under Federal and, if applicable, New York law. Federal Rule of Civil Procedure 4(e)(1) provides that service may be made upon an individual within any judicial district of the United States according to "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Thus, if any of the Defendants are located in the United States, New York's service of process rules apply. Alternatively, if Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies. Applying either New York law or federal Rule 4(f), alternate service, and, in particular, service by email, is available and within the Court's discretion.

## A.    New York CPLR § 308 Authorizes Alternate Service on Individuals in the United States.

The New York Civil Practice Law and Rules § 308(5) provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of §308 all require that a plaintiff know the whereabouts or home or business address of a defendant.

For the reasons explained above, service via § 308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method. Courts in New York have authorized service of process by email where service by traditional methods was impracticable. *See, e.g., Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) ("[B]oth New York courts and federal courts have, upon application by plaintiffs, authorized [e]mail service of process as an appropriate alternative method when the statutory methods have proven ineffective.") (citing *Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*, 910 N.Y.S.2d 418, 422 (N.Y. App. Div. 2010); *Snyder v. Energy, Inc.*, 857 N.Y.S.2d 442, 449 (N.Y. Civ. Ct. 2007) (authorizing service by email of defendant corporation and its president under § 308(5) and § 311(b) where service by traditional means proved impracticable); *Bomb First Prods., LLC v. Hustla, Inc.*, No. 651753/2012, 2014 N.Y. Misc. LEXIS 5928, at *1 (N.Y. Sup. Ct. June 24, 2014) (granting motion to permit alternative service by email pursuant to § 308(5) and § 311(b)).

## B.    Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.

Federal Rule of Civil Procedure 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternative service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1)."). Accordingly, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *8. Alternative service of process by email is proper where, as here, (i) the proposed method of service is not prohibited by international agreement and (ii) the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims. *See Rio Props.*, 284 F.3d at 1017-18 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process").

1. **Service of Process by Email Is Not Prohibited by International Agreement**

As discussed above, Defendants Xuhong Wang and Bu Ru, if they are even real people, are believed to reside in China, though Plaintiffs do not know their addresses because Defendants registered their domain names with false addresses, and do not otherwise provide any means to locate them. *See* Seymour Decl. ¶¶ 7-8. Plaintiffs do not know the location of the Doe Defendants because they have actively concealed their locations and identities.

Though China is a member of The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), it does not apply in cases such as this, where the address of the person to be served is not known to the party serving process. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see also Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff]."); *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *2-6 (finding the Hague Convention did not apply and authorizing service by email where actual addresses used to register domain names could not be verified as accurate).

Even if the Hague Convention applied, it would not bar service by email. First, courts have routinely granted alternate service notwithstanding the availability of service under the Hague Convention in cases such as this, where Plaintiffs face immediate irreparable injury. *See Rio Props.*, 284 F.3d at 1015 ("[T]he advisory [committee] notes suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods of service remain incomplete or unattempted."); *Richmond Techs, Inc. v. Aumtech Bus Solutions, No.* 11-CV-02460-LHK, 2011 WL 2607158, 2011 U.S. Dist. LEXIS 71269 (N.D.

Cal. July 1, 2011), at *44 (granting alternate service where plaintiffs sought a preliminary injunction and "presented issues that require resolution with greater urgency than the Hague Convention process can accommodate"); *In re GLG*, 287 F.R.D. at 266 (granting alternate service on a Chinese defendant where "the length of time required for service under the Hague Convention, approximately six to eight months, may unnecessarily delay this case"). This is especially the case where Defendants have made purposeful attempts to conceal their identities and locations. *See Williams-Sonoma Inc. v. Friendfinder, Inc.*, No. C 06-6572 JSW, 2007 WL 1140639, 2007 U.S. Dist. LEXIS 31299, at *4-6 (N.D. Cal. Apr. 17, 2007) (granting alternate service by email where defendants could not be located or refused service, and where email proved to be the most effective means for communication). This case also requires resolution with greater urgency than that afforded under the Hague Convention. Although Plaintiffs have not sought a temporary restraining order, they do plan to seek a preliminary injunction, both to enjoin the infringement and to preserve Defendants' assets, including the funds temporarily on hold with PayPal, during the pendency of the case.

Second, neither the Hague Convention, nor China's limited objections, prohibit service by email. Article 10 of the Hague Convention identifies means of service other than through a contracting state's "Central Authority" and allows for service of process via those alternative means provided that the destination state does not object to those means. Hague Convention Art. 10, Nov. 15, 1965, 20 U.S.T. 361. Service by email is not among the means listed in Article 10. *See PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *11. "Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." *Id.*; *see also Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *3 (collecting cases authorizing email service); *Gurung v. Malhotra*,

279 F.R.D. 215, 220 (S.D.N.Y. 2011) ("[India's] objection to service through postal channels does not amount to an express rejection of service via electronic mail.").

While China has made a qualified objection to Article 10, the objection makes no mention of email or other electronic means of service. *See* China's Declarations to the Hague Convention, *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (last visited July 11, 2017). Therefore, China's accession to the Hague Convention is not a bar to alternate service via email. *See Sulzar Mixpac AG v. Medenstar Indus. Co.*, No. 15 Civ. 1668 (JSR), 2015 U.S. Dist. LEXIS 159762, at *4-5 (S.D.N.Y. Nov. 27, 2015) (declining to authorize service by postal mail in light of China's objections under Art. 10(a), but allowing service by email listed on defendant's homepage).

### 2.   Service of Process by Email Is Reasonably Calculated to Provide Notice to Defendants

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted). "Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts." *Broadfoot v. Diaz*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000). As a result, courts have fashioned a range of alternative methods of service, including service by email. *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (ordering service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (ordering service by email and fax); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (ordering

service by email and international registered and standard mail).

Email service on a defendant engaged in an illegal online business is not only appropriate and constitutionally acceptable in a case such as this, but is the most effective means of providing the defendant with notice of the action. *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants conducted their business online and relied on an email address to conduct their business); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same; noting that Plaintiff's test email was not returned as undeliverable); *Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3) clearly authorizes service by email where defendant's address was unknown and emails sent using the addresses defendant provided to the domain name registrar did not bounce back); *Chanel, Inc. v. Xu*, No. 2:09-cv-02610, 2010 WL 396357, 2010 U.S. Dist. LEXIS 6734, at *10 (W.D. Tenn. Jan. 27, 2010) (finding alternate service by email appropriate where "[d]efendants have organized their online business so that the only way customers can contact them to place an order or lodge an inquiry is by e-mail").

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them." *Williams*, 231 F.R.D. at 487 (quoting *Broadfoot*, 245 B.R. at 721). Thus, email service has the greatest likelihood of reaching e-commerce merchants,

particularly defendants who are adept at hiding their identity and location. *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

In this case, Defendants conduct their online business entirely via email. They accept payments over PayPal via email, provide confirmations of purchase via email, encourage customers to contact them via email, and register for third-party services via email. Plaintiffs received no indication that their emails to Defendants were undeliverable. Accordingly, service on Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims. Email will not only be effective in this case, but will be the most reliable means of communicating with Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the relief requested herein—limited expedited discovery and alternate service.

Dated: July 28, 2017      Respectfully submitted,

             */s/ Leo M. Lichtman*
             Matthew J. Oppenheim
             Julie C. Chen
             Leo M. Lichtman
             OPPENHEIM + ZEBRAK, LLP
             5225 Wisconsin Ave. NW, Suite 503
             Washington, DC 20015
             Tel: 202-480-2999
             matt@oandzlaw.com
             julie@oandzlaw.com
             leo@oandzlaw.com
             *Attorneys for Plaintiffs*